# GIBSON *v.* GIBSON.

DIVORCE; ADULTERY; APPELLATE PRACTICE.

1. The evidence in a suit for divorce reviewed and *held*, reversing the decree of the court below, sufficient to sustain the charge of adultery, made against the defendant.
2. A motion by the appellant to amend a decree of this court reversing a decree of the court below dismissing a bill for divorce, so as to direct the lower court, in entering a decree in favor of the complainant, to allow her arrearages of alimony to the date of the decree as well as permanent alimony and counsel fees, *overruled*.

No. 1036. Submitted February 7, 1901. Decided March 8, 1901.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia, dismissing a bill in equity for a divorce. 　　　　　　　*Reversed.*

The facts are sufficiently stated in the opinion of the court:

*Mr. Charles A. Douglass* and *Mr. Joseph D. Wright* for the appellant.

*Mr. Tracy L. Jeffords* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This case is before us on appeal from a decree dismissing a bill for divorce filed by the appellant, Annie V. H. Gibson, against her husband, Charles A. Gibson, April 27, 1899.

The bill charged acts of adultery committed by the defendant with a party named therein during the summer and fall of 1898, and later.

It appears that in the spring of 1898, the defendant, who was then separated from his wife, took up his residence in a house on Thirteenth street, city of Washington, in com-

pany with two unmarried male friends. The three kept house together and contributed equally to the expenses of living. They employed a colored woman as housekeeper and cook, who occupied a furnished room in the house. She was a widow between twenty-five and thirty years of age; and it is between her and the appellee that the criminal relations are alleged to have existed.

It appears that the complainant and defendant, through the efforts of mutual friends, were reconciled about March 19, 1898. On that date she came to live in the house, by consent also of defendant's associates, and the necessary changes of rooms were made to accommodate her. At that time she had no knowledge of any of the facts charged in her bill.

The reconciliation was of short duration. Becoming suspicious of the relations between the defendant and the housekeeper aforesaid, the complainant left the house about April 24, 1899, and three days thereafter commenced this suit.

There is no question of law involved in the decision of this case; it turns entirely upon the sufficiency of the evidence offered to sustain the charge of adultery. We cannot concur with the learned justice who presided at the hearing, in his view of the credibility and weight of this evidence. As our decision can, under the circumstances, have no particular value as a precedent, we will not review the evidence; for nothing less than some apparent importance, in the interest of justice, would justify spreading its details upon the pages of an opinion.

Considering the ease with which such charges can sometimes be made against an innocent man or woman, and trifles light as air can sometimes be converted by notice into potent circumstances, as well also as the duty owed to those whose reputations may be involved, though not actual parties to the suit, the whole evidence demands most careful scrutiny; and this it has received.

If conviction of the defendant's guilt depended upon the testimony of one of the leading witnesses for the complainant, we could readily concur with the court below in its

rejection; because, though not successfully impeached, doubt was cast upon his credibility. But it seems to have been overlooked that he was corroborated by the policeman, Martin, in respect of one material fact. This last witness also testified to an additional circumstance furnishing a strong ground for inference.

There was, besides, other independent evidence. The corner house, next to that occupied by the defendant and his companions, was separated from it by an open space about forty feet in width. Many windows of the rooms of defendant's house opened upon this space. A witness, disinterested and of good character, who had been for ten years in the service of the occupant of the corner house, testified to conduct witnessed by him on two occasions, the only reasonable inferences from which strongly sustain the truth of the charge of the bill. Moreover, the occupant of the corner house, and another resident of the vicinity, testified to the presence of several women, as well as men, in the house of defendant and his companions, on two distinct occasions, and to their drinking, noise, and general disorderly conduct. This testimony tended to identify defendant as present on at least one of these occasions and as guilty of one special act of disorderly conduct.

That the women present at such times consisted of the housekeeper and her friends is apparent from her own testimony given as a witness for the defendant. She said that she had permission to invite her friends, both male and female, to the house when the proprietors were absent, and occasionally exercised the privilege in the daytime and at night. She had permission to occupy the parlor and sitting-room and to use the piano. She said she only invited nice people, and while there was music and a little dancing, there was no disorderly conduct. Beer was kept in the house, to which she had free access, and she occasionally gave a glass to her friends. She denied, however, the presence of the defendant at any one of these meetings, as well, also, as the specific charges of misconduct at any time or place.

There are some other circumstances in evidence which

tend to add some strength to the case of the complainant; but further comment is hardly necessary.

The decree appealed from must be reversed, with costs; and the cause remanded with direction to enter a decree in favor of the complainant.                    *Reversed.*

On the 30th day of March, 1901, *Mr. Douglass* and *Mr. Wright,* on behalf of the appellant, filed a motion to recall the mandate and amend the decree of this court.

This motion was on the 3d day of April, 1901, overruled, Mr. Justice SHEPARD delivering the opinion of the Court:

The appellant has filed a motion to amend the decree reversing this cause, to the end that the Supreme Court of the District shall be directed to allow her, as complainant below, arrearages of alimony up to the date of the decree by this court, as well as such further permanent alimony as may be meet and proper, including a reasonable counsel fee for her solicitors.

We see no reason for amending the decree. It appears that the court below had made an order for the payment of alimony *pendente lite* and a certain sum as attorney's fees. This was in arrears when the final decree dismissing the complainant's bill was rendered November 2, 1900, and an additional order was entered directing the defendant to pay the same to the amount of $160.

The defendant raised no objection to this order and took no appeal therefrom. There is nothing in the record to show whether the alimony ordered to be paid was reasonable or oppressive. No question concerning alimony was raised on the argument or suggested in the brief of either party. The single question presented was whether the evidence submitted established the main charge of the bill?

Being satisfied of its sufficiency, the decree dismissing the bill was reversed, and the cause remanded for the entry of a decree thereon for the complainant.

The question of alimony was not considered, for the reasons

heretofore given, and was left, as it should have been, to the determination of the court below, at the time of entering the final decree granting the complainant her divorce, upon such facts as may then appear.

It is not necessary that the mandate be returned to this court, and the motion is *overruled.*    *The clerk will certify this opinion and order to the Supreme Court of the District of Columbia.*